NORTHSIDE AMATEUR BOXING SCHOOL BINGO CLUB,
d.b.a. Rinks Flea Market Bingo, Appellant,

v.

HAMILTON COUNTY GENERAL HEALTH DISTRICT et al., Appellees.

[Cite as *Northside Amateur Boxing School Bingo Club v. Hamilton
Cty. Gen. Health Dist.*, 184 Ohio App.3d 596, 2009-Ohio-5122.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–1100.

Decided Sept. 29, 2009.

Cohen, Todd, Kite & Stanford, L.L.C., Kenneth D. Jameson, and Marion E. Haynes, for appellant.

Richard Cordray, Attorney General, and Angela M. Sullivan, Assistant Attorney General, for appellees.

BROWN, Judge.

{¶ 1} This is an appeal by appellant, Northside Amateur Boxing School Bingo Club, from a judgment of the Franklin County Court of Common Pleas, affirming an order of appellee, Hamilton County General Health District, which affirmed the decision of an independent decision-maker finding appellant to be in violation of provisions of the Ohio SmokeFree Workplace Act ("the SmokeFree Act" or "the act").

{¶ 2} On May 22, 2007, appellee sent appellant correspondence stating that a report had been filed alleging violations of the SmokeFree Act occurring at the Bingo Club in May 2007. In response, appellant sent a letter to appellee, dated June 15, 2007, asserting that the Bingo Club was exempt from smoking prohibitions under the act's "private club" exception. On August 6, 2007, appellee issued a letter of warning to appellant, notifying appellant that it had been found in violation of the act and that "[s]ubsequent violations may result in the imposition of a civil fine."

{¶ 3} By correspondence dated September 18, 2007, appellee informed appellant that a report had been filed alleging violations of the SmokeFree Act occurring at the Bingo Club in September 2007. Specifically, the notice alleged the following violations: "Smoking in Prohibited Area" and "Ashtray Present." On October 12, 2007, appellant sent a letter to appellee requesting that its operation be deemed exempt from the mandates of the SmokeFree Act and also requesting an administrative review. An investigator for appellee visited the Bingo Club on September 28, 2007, and reported observing ashtrays throughout the facility, as well as several individuals smoking. On November 5, 2007, appellee notified appellant that it had been found in violation of the act and that a civil fine of $100 would be imposed because appellant had a previous finding of violation.

{¶ 4} On November 7, 2007, appellee informed appellant that an investigation had been opened in response to a report of further alleged violations of the SmokeFree Act occurring at the Bingo Club in November 2007. This notice alleged the following violations: "Smoking in Prohibited Area" and "Inadequate Signs Posted." An investigator visited the site on November 30, 2007, and reported observing ashtrays at the facility, as well as several bingo players smoking. By correspondence dated January 18, 2008, appellant requested an administrative review of this proposed violation.

{¶ 5} On February 29, 2008, an administrative hearing was held before an independent decision-maker ("hearing examiner") regarding alleged violations observed by investigators at the Bingo Club on September 28 and November 30, 2007. The hearing examiner issued a decision on April 21, 2008, including

findings of fact and conclusions of law, finding that appellant did not qualify for the act's private-club exemption because the Bingo Club was not located in a freestanding structure occupied solely by the club, as required under R.C. 3794.03(G). The hearing examiner further found that appellant, on the two dates in question, permitted smoking on the premises in violation of R.C. 3704.02(A) and 3794.06(B). The hearing examiner determined that a fine of $100 was appropriate for the violation occurring on September 28, 2007, and that a fine of $500 was appropriate for the violation occurring on November 30, 2007.

{¶ 6} Appellant filed objections to the hearing examiner's decision. On May 12, 2008, appellee issued an order affirming the hearing examiner's decision. On May 30, 2008, appellant filed an appeal with the trial court pursuant to R.C. 119.12 and 3794.09. By decision and entry filed on November 25, 2008, the trial court affirmed the adjudication order of appellee, finding that the order was supported by reliable, probative, and substantial evidence and was in accordance with law.

{¶ 7} On appeal, appellant sets forth the following four assignments of error for this court's review:

Assignment of Error No. I:

The court erred in finding the appellees' May 15, 2008 administrative order is supported by reliable, probative, and substantial evidence and is in accordance with the law.

Assignment of Error No. II:

The court erred in finding the appellant is subject to the Ohio Smoke–Free Workplace Act because it operates a "place of employment."

Assignment of Error No. III:

The court erred in finding the appellant does not qualify for the Ohio Smoke–Free Workplace Act's "private club" exemption because the appellant is not located in a freestanding structure occupied solely by the appellant.

Assignment of Error No. IV:

The court erred in finding the appellees' delay in providing appellant with a timely hearing on proposed violations of the Ohio Smoke–Free Workplace Act did not deny the appellant due process of law.

{¶ 8} Appellant's first, second, and third assignments of error are interrelated and will be considered together. Under these assignments of error, appellant argues that the trial court erred in finding that appellee's order was supported by reliable, probative, and substantial evidence and was in accordance with law. Further, appellant contends that the court erred in finding that the Bingo Club is

a "place of employment" and in affirming appellee's determination that the Bingo Club is not located in a freestanding structure occupied solely by appellant.

{¶ 9} R.C. 119.12 provides that a court of common pleas:

[M]ay affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

{¶ 10} In *2216 SA, Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 07AP–600, 2007-Ohio-7014, 2007 WL 4532701, ¶ 7–8, this court delineated the applicable standards of review for the court of common pleas and an appellate court in reviewing an administrative appeal, stating as follows:

The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" *Lies v. Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 207[, 2 OBR 223], 441 N.E.2d 584, quoting *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280[, 58 O.O. 51, 131 N.E.2d 390]. Even though the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, the findings of the agency are not conclusive. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111[, 17 O.O.3d 65, 407 N.E.2d 1265].

An appellate court's standard of review in an administrative appeal is more limited than that of a common pleas court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. It is not the function of the appellate court to examine the evidence. Id. The appellate court is to determine only if the trial court has abused its discretion. Id. Abuse of discretion is not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Id. Absent an abuse of discretion on the part of the trial court, an appellate court may not substitute its judgment for that of an administrative agency or a trial court. Id. Nonetheless, an appellate court does have plenary review of purely legal questions in an administrative appeal. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418[, 784 N.E.2d 753], at ¶ 15. Accordingly, we must also determine whether the common pleas court's decision is in accordance with law.

{¶ 11} Ohio's SmokeFree Act, codified under R.C. Chapter 3794, became effective on December 7, 2006. R.C. 3794.02(A) states as follows:

No proprietor of a public place or place of employment, except as permitted in section 3794.03 of this chapter, shall permit smoking in the public place or place of employment or in the areas directly or indirectly under the control of the proprietor immediately adjacent to locations of ingress or egress to the public place or place of employment.

{¶ 12} R.C. 3794.03 lists several exemptions under the act, including an exemption for "private clubs." Specifically, R.C. 3794.03 states:

The following shall be exempt from the provisions of this chapter:

* * *

(G) Private clubs as defined in section 4301.01(B)(13) of the Revised Code, provided all of the following apply: the club has no employees; the club is organized as a not for profit entity; only members of the club are present in the club's building; no persons under the age of eighteen are present in the club's building; the club is located in a freestanding structure occupied solely by the club; smoke from the club does not migrate into an enclosed area where smoking is prohibited under the provisions of this chapter; and, if the club serves alcohol, it holds a valid D4 liquor permit.

{¶ 13} Thus, pursuant to R.C. 3794.03(G), a private club is exempt from the smoking prohibitions of the act "provided all" of the above listed criteria are met. As noted under the facts, the hearing examiner and appellee concluded that appellant did not qualify for the private-club exemption based upon a determination that the Bingo Club was not located in a freestanding structure occupied solely by the club. We initially address appellant's contention that the trial court erred in affirming appellee's determination on this issue.

{¶ 14} Appellant argues that ambiguity arises from the language of R.C. 3794.03(G) because rules promulgated by the Ohio Department of Health do not define the meaning of the phrases "freestanding structure" and "occupied solely by the club." Appellant maintains that the portion of the building utilized by the Bingo Club fits the usual definition of a "freestanding structure" and further argues that the Bingo Club is "occupied solely by the club" because it is the only tenant occupying the structure during its hours of operation.

{¶ 15} We first address appellant's arguments that the term "freestanding structure" is ambiguous and that the portion of the building in which the Bingo Club operates is a freestanding structure. During the administrative proceedings, the hearing examiner heard testimony regarding the layout of the facility, and certain exhibits were admitted on this issue. The hearing examiner's report cited testimony that appellant's bingo hall constitutes one of several different operations conducted in separate rooms within a single structure; specifically, in addition to a bingo-hall room, the structure contains rooms housing a flea market,

a concession stand, and a boxing school/gym. A diagram of the facility was submitted as part of the evidence, depicting the bingo hall, flea market, and an adjoining boxing school/gym, all located inside the same building. During the administrative hearing, an investigator testified that vendors operate a concession stand in a space between the boxing school/gym and the flea market during bingo hours. The hearing examiner concluded that there was credible evidence presented that the facility in which the Bingo Club conducts its operation is not a "freestanding structure."

{¶ 16} The trial court, in addressing appellant's argument that the statute and accompanying regulations do not define "freestanding structure," cited dictionary definitions of "freestanding" to mean "standing alone," "not attached to or supported by anything," and "not physically attached to another unit." The court further noted that appellant's bingo operation took place in one of five separate rooms in the building, that the bingo room was physically attached to two of the other rooms by sharing common walls, and that it also shared a wall with the lobby area. In considering the above definitions of "freestanding," as well as the record evidence of the layout of the bingo hall and its surroundings, the trial court agreed with appellee's determination that the Bingo Club was not located in a freestanding structure.

{¶ 17} In general, "[a] reviewing court, in interpreting a statute, 'must give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which the legislature has delegated the responsibility of implementing the legislative command.'" *In re 138 Mazal Health Care, Ltd.* (1997), 117 Ohio App.3d 679, 685, 691 N.E.2d 338, quoting *State ex rel. McLean v. Indus. Comm.* (1986), 25 Ohio St.3d 90, 25 OBR 141, 495 N.E.2d 370. Furthermore, "in order to sustain an agency's application of a statutory term, a reviewing court ' "need not find that its construction is the only reasonable one." ' " *138 Mazal Health Care* at 685, 691 N.E.2d 338, quoting *Udall v. Tallman* (1965), 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616, quoting *Unemp. Comp. Comm. of Territory of Alaska v. Aragon* (1946), 329 U.S. 143, 153, 67 S.Ct. 245, 91 L.Ed. 136.

{¶ 18} Although the term "freestanding structure" is not defined under the statute or accompanying rules, we find appellee's interpretation of that term, and its application of the statute to the facts of this case, to be reasonable. Accordingly, we conclude that the trial court did not err in deferring to the agency's construction of the statute and its determination that the Bingo Club was not located in a freestanding structure.

{¶ 19} We note that appellant's primary argument in support of an ambiguity pertains to the phrase "occupied solely by the club." Appellant maintains that this provision of the statute would allow the Bingo Club to operate in a building

occupied by other tenants as long as the bingo operation is conducted during hours of the day in which other tenants are not using their spaces. The trial court, however, found appellant's interpretation of the statutory language to be "unreasonably strained," and we similarly find nothing in the act that would support such a construction.

{¶ 20} Pursuant to R.C. 3794.02(A), smoking is prohibited in a "public place" or "place of employment." The statute defines "place of employment" in part to mean "an enclosed area under the direct or indirect control of an employer," and the statute further provides that an enclosed area is a place of employment "without regard to the time of day or the presence of employees." R.C. 3794.01(C). The only apparent exception in the act referring to "hours of operation" is contained in R.C. 3794.03(A), addressing an exemption for "private residences," which provides that such residences are exempt from the provisions of the act "except during the hours of operation as a child care or adult care facility for compensation, * * * or during the hours of operation as a business, when employees of the business, who are not residents of the private residence or are not related to the owner, are present." Presumably, had the legislature intended an exception for "hours of operation" with respect to a private club, it could have provided similar clear language and intent. We further note that appellant's preferred construction runs contrary to the act's stated intent that "provisions of this chapter shall be liberally construed so as to further its purposes of protecting public health." R.C. 3794.04.

{¶ 21} Based upon the foregoing, we find no abuse of discretion by the trial court in upholding the determinations of the hearing examiner and appellee that appellant failed to satisfy all the requirements for the private-club exemption under R.C. 3794.03(G), as the Bingo Club is not "located in a freestanding structure occupied solely by the club."

{¶ 22} We next address the issue raised under appellant's second assignment of error, in which appellant challenges the trial court's finding that the Bingo Club is a "place of employment" under R.C. 3794.02(A). Appellant maintains that the Bingo Club is not a place of employment because it relies upon volunteers and not employees. Appellant argues that the trial court cited no evidence in the record demonstrating actual control wielded by the Bingo Club over volunteers; appellant further argues that the record is devoid of any evidence that provisions of the Bingo Club's by-laws, pertaining to the association's control over officers, are actually observed.

{¶ 23} At the outset, we note that the issue of whether the Bingo Club is a place of employment, for purposes of R.C. 3794.02(A), was not challenged by appellant during the administrative hearing. Rather, appellant argued that it was exempt from the SmokeFree Act based upon the applicability of the "private

club" exemption under R.C. 3794.03(G). Further, while appellant did raise, on appeal to the trial court, the issue of whether the Bingo Club had employees, it made that argument in the context of addressing one of the several requirements for the private-club exemption of R.C. 3794.03(G), i.e., the requirement that the club "has no employees." [1] The trial court, however, appears to have analyzed appellant's claim of "no employees" as presenting a challenge that the Bingo Club was not a "place of employment" under R.C. 3794.02(A). As such, the court addressed an issue arguably not before it, and appellant now raises, as assigned error, an issue it did not contest at the administrative level.

{¶ 24} Even assuming that appellant had asserted, during the administrative proceedings, that the Bingo Club was not a place of employment due to lack of employees, we find no error with the trial court's determination that employees were utilized by appellant. Pursuant to R.C. 3794.01(C), the term "place of employment" is defined as "an enclosed area under the direct or indirect control of an employer that the employer's employees use for work or any other purpose, including but not limited to, offices, meeting rooms, sales, production and storage areas, restrooms, stairways, hallways, warehouses, garages, and vehicles." The term "employee" is broadly defined under R.C. 3794.01(D) to mean not only "a person who is employed by an employer, or who contracts with an employer or third person to perform services for an employer," but to also include one "who otherwise performs services for an employer for compensation *or for no compensation.*" (Emphasis added.) This court, in considering the definition of "employee" under R.C. 3794.02(D), has previously noted that "the concept of control, as utilized under master-servant principles, and * * * suggested by the Act's definition of 'place of employment,' is relevant to the issue of an employer-employee relationship under the Act." *Ohio Licensed Beverage Assn. v. Ohio Dept. of Health,* 10th Dist. No. 07AP–490, 2007-Ohio-7147, 2007 WL 4564391, ¶ 38.

{¶ 25} The findings of fact, as set forth in the hearing examiner's report, cite testimony by an investigator observing individuals performing duties at the Bingo Club, including selling instant tickets to players, spinning a bingo wheel, and calling out bingo numbers. An investigator spoke with an individual "who claimed to be the concession manager," and appellant's director testified that vendors are present in the space between the boxing school gym and the flea market during bingo hours. The hearing examiner also cited testimony that the bingo operation is conducted by volunteers who "answer to the Bingo Manager, Vicki Davis," who "directs what job each volunteer does on a particular evening."

---

1. The hearing examiner, having determined that the Bingo Club was not located in a freestanding structure occupied solely by the club, concluded that it was not necessary to address the requirement of R.C. 3794.03(G) that the club have no employees.

{¶ 26} The trial court, citing the evidence presented at the administrative hearing, concluded that appellant, in order to accomplish its business of operating a bingo hall, utilized workers (even if deemed volunteers) to accomplish the various tasks, and that appellant exercised control over those workers. The trial court also found that the association's by-laws, which were introduced into evidence, vested control over the association's secretary. A review of the administrative record reflects that there was evidence to support the trial court's determination that "the volunteers and others are employees of appellant," and we find unpersuasive appellant's contention that this court should reverse that portion of the trial court's decision finding that "R.C. 3794.02(A) is applicable to prohibit smoking on the premises."

{¶ 27} In addition to the hearing examiner's determination that the facility in which the Bingo Club operates is not located in a freestanding structure occupied solely by the club, the hearing examiner's report contains unchallenged findings that investigators observed ashtrays throughout the bingo hall and that bingo players were smoking. Based upon the record, we conclude that the trial court did not abuse its discretion in concluding that the order of appellee, finding appellant in violation of provisions of the SmokeFree Act, was supported by reliable, probative, and substantial evidence, and was in accordance with law.

{¶ 28} Accordingly, appellant's first, second, and third assignments of error are without merit and are overruled.

{¶ 29} Under its fourth assignment of error, appellant contends that the trial court erred in failing to find a due-process violation. Specifically, appellant argues that it requested an administrative hearing following notice of the second violation; however, prior to setting a hearing on the second violation, appellee issued a third notice of violation, and subsequently set a hearing on both the second and third violations. Appellant notes that the hearing on both violations took place approximately four months after its initial request for an administrative hearing. Appellant argues that the failure of appellee to hold separate hearings between the time of the second violation and the third violation constituted a denial of due process.

{¶ 30} In addressing appellant's due-process argument, the trial court noted that R.C. Chapter 3794 does not set forth any fixed deadlines for the time of a hearing regarding smoking violations, and the court determined that the approximately four-month period of time between the request and the hearing on the violation was not unduly lengthy and did not result in a per se denial of appellant's due-process rights. The trial court also found nothing in the relevant statutes or regulations requiring appellee to have conducted a hearing on the

second violation prior to issuing the notice of the third violation, the court observing that "an unrealistic situation would be created if appellee were foreclosed from investigating and pursuing additional violations for such time as a citation is appealed."

{¶ 31} Appellant's primary argument is that appellee's delay in holding a hearing subjected it to serious financial risk, as the act provides for progressive fines. However, as noted by the trial court, payment of any fine is not required until after a final finding of violation. See Ohio Adm.Code 3701–52–09(G) ("[u]pon a final finding of violation, the Ohio department of health shall invoice the proprietor or individual for the assessed fines"). We further note that appellant did not, upon receiving the warning letter notifying it of a first finding of violation, attempt to appeal that finding, thus undermining appellant's contention that administrative delay exposed it to serious financial risk without the opportunity to have its arguments heard. Appellant's contention that it operated under the good-faith belief that the Bingo Club qualified under the act's private-club exemption is similarly unconvincing, as R.C. 3794.02(E) provides that "[l]ack of intent to violate a provision of this chapter shall not be a defense to a violation." Further, as noted by the trial court, nothing contained in the applicable statutes and regulations mandates the resolution of an appeal before further alleged violations may be prosecuted. Upon review, the record shows that appellant was afforded the opportunity to challenge the alleged violations, and we find unpersuasive appellant's argument that it was denied due process because it was not provided with separate hearings on the second and third proposed violations. Accordingly, the trial court did not err in denying appellant's due-process claim, and appellant's fourth assignment of error is overruled.

{¶ 32} Based upon the foregoing, appellant's first, second, third, and fourth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

BRYANT and SADLER, JJ., concur.